This case raises two issues for the court this morning. First, does Ms. Jarrett have the right to appeal this issue in the first place? And if she does, did the district court violate her constitutional rights in terminating her from the diversion program? As to the right to appeal, Ms. Jarrett does have the right to appeal because nothing— There's an appeal waiver, right? There's an appellate waiver in the plea agreement. She said she won't appeal, right? She said she would not appeal the convictions. There was nothing in the CASA contract, the seven-page CASA contract, which governs diversion proceedings. There was nothing in there about a waiver of appeal. But Your Honor's right. There was the standard central district waiver of appeal language in the plea. And your position is that that waiver only goes to the plea, anything having to do with conviction, but doesn't cover the CASA program? Exactly, Your Honor. Yes. And how do you explain that? Because this was a diversion case. If the government wanted Ms. Jarrett to waive her right to appeal a diversion termination, it needed to tell her that in the CASA contract or in the Rule 11 colloquy where it was going through the documents and the plea agreement and the procedure. I don't think it's up to Ms. Jarrett to put the pieces together to determine if she has a right to appeal. I mean, she has a lawyer, right? Yes, she has. That's her name. Correct. I think... I mean, so it's not like she's on her own time to construe these papers. You weren't her lawyer, right? I was not there. Correct. Okay. So we can talk freely then. I'm not sure what her lawyer told me. Well, no, no. If you were the lawyer, you'd be in a little bit of an awkward position because you would know what you had said to her, and then it would be very awkward to have this conversation. But since you are not the lawyer, we can speculate freely as to what could or should have happened, and you're not giving anything away. So why can't we or shouldn't we presume that the lawyer, whose competence has not been called into question, would have told her that, would have said, you know, you're not going to appeal, and if you know you're, you know, this is a great chance for you, you are given this great opportunity, but, you know, just be aware that if you fall off the wagon, so to speak, you know, if you don't do what's required, you're not going to be able to appeal. You don't think the lawyer would have said that? Well, I don't know. I don't know if the lawyer contemplated a challenge to a cost determination. Well, I guess I'm asking a somewhat slightly different question. I'm saying since the lawyer's competency has not been called into question at this point, it might be at some future, but, you know, at this point it hasn't been, why don't we presume that the lawyer did what a competent lawyer would do so we can talk about it, and we don't have to speculate what actually happened. We can just talk about what would a competent lawyer tell a client about a situation like this. I haven't done stuff like this, so I don't know. Why don't you tell us, why wouldn't a competent lawyer, I mean, I'm sorry, I've never done this as a lawyer, so I don't know what actually happens when you have such a diversion program, but isn't that the kind of conversation a competent lawyer would have with his client? I think a competent lawyer would have told Ms. Jarrett what the records indicated, and the records indicated from the CASA contract that there was nothing about waiving an appeal, and in the plea agreement there was the standard appellate waiver language, and what those records, I think, together show is that if you're terminated from the CASA program, you can't then say I shouldn't have a conviction. So let's say Ms. Jarrett's terminated. She doesn't contest the validity of her termination, but then she says, you know, it wasn't really a big deal. I should not go straight to conviction and sentencing because of that. Well, there were several stages, right? So it's not like she went off the rails or fell off the wagon at once and then, bam, she has a conviction. The district court was fairly patient with her. The district court made efforts to bring her back into compliance. That's what's really so sad about this case is she had a 12-month diversion program. She'd done 11 months. She was a month away from being done, from having this case dismissed. And that's when... I mean, we really can't fault the district judge for being impatient or quick on the draw or anything of that sort. I totally agree. I think that these programs are awesome. These are great programs in San Diego. I do them down there in Los Angeles. The judges who administer these programs, I think, do a great job and really care about the participants. These are great programs, and I think what happened in this case is Ms. Jarrett kept making promises that she would do things that she just couldn't keep because of her impoverished status, because of her lack of resources. And so I think there was a frustration from pretrial services, from the district court, and at some point they just said that's enough and you go into prison. And I wasn't... Let me ask another question about the waiver. Is it your position that this particular waiver doesn't include the CASA program, or do you take the broader position that inherently this kind of waiver can't include determination of the CASA program because that would sort of make that judgment unreviewable, the district court's decision unreviewable, and there is some sort of structural reason why this right can't be waived? I'm just wondering. It wasn't clear to me. I think if they put a sentence in the CASA contract saying you have no right to appellate review of determination, I think we're not here. That's not in the contract. And so I'm saying under the records and the facts we have in this case... So you agree that she could contract out of the right to appeal through the plea bargain process? Yes. But your position is she didn't do it in this case? Yes, Your Honor. So if we get to the merits, I touched on those already. Eleven months done, one month to go. What happened in September of 2014, her car broke down. She had no money to fix it. What's the standard of review of the decision of the district judge to terminate? Well, it's abuse of discretion in general for diversion-type proceedings. In this case, the defense counsel made clear to the district court these struggles that Ms. Jarrett was having, the problems with transportation and getting rides and resources and where she lived. It was never constitutionalized like we've done in this case, but I think it was presented enough to the district court that this should be an abuse of discretion. And, again, I'm not trying to say anything bad about pretrial services or judge felons. I think there was just a frustration that grew with Ms. Jarrett based upon her promises to do things, which she fully intended to do, and then her not following through because she was broke. Are you asking us to find the judge abused of discretion and he should go back and reinstate her or have a hearing on the reason she said she didn't comply? What is it that we – what did the judge do wrong that we are supposed to remedy? The judge didn't give sufficient consideration to her impoverished status and how that directly correlated with her noncompliance in September and November of 2014. I think the record is developed enough for the court to remand it with an order that she be put back in diversion. If the court feels that the record is insufficient or there's holes as to exactly what the judge heard or what happened in 2014, then we could – the court could remand it for a hearing as to whether her noncompliance was sufficiently tied to her impoverished status that the Constitution – We've got about a minute left.  Yes, please. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the Court. Ashley All for the United States. Defendant's waiver of appeal resolves her contentions in this court. Defendant waived, quote, any right to appeal her convictions. Yeah, and she's not – she's not appealing her conviction. That standard appeal waiver language that you all include in plea agreements gets that. In the ordinary case, you would agree, it gets at things like your factual guilt for the underlying offense. You're not going to be able to raise any challenges to that. You're not – you're going to end up waiving any right to – if you brought a suppression motion. It's that kind of thing, right? It goes to the – your guilt of the offense. The thing that we're – that's before us now is a totally collateral matter, right, that whether you complied with the conditions of this diversion program, it doesn't seem to me it's wrapped up at all in the things that are normally covered by the standard plea waiver language that we're dealing with here. I would disagree with you, Your Honor. And I think this Court's precedents in Rahman and Geronimo stand for the same proposition. In Rahman and Geronimo, defendants appealed the denial of their motions to withdraw the very plea agreement that contained their waivers of appeal. And in those cases, the Court made clear that those were covered by very similar waivers of the right to appeal. The language in Geronimo and Rahman, and Geronimo discusses one other case, are effectively indistinguishable from the language here. I guess I don't follow. A motion to withdraw a guilty plea you think is as collateral to the standard plea waiver language as this diversion program? It is similarly entailed by the conviction. And I think the facts here emphasize this in the context of CASA specifically. The CASA contract made plain the defendant's conviction would exist if and only if she was terminated CASA or quit CASA. There was no other circumstance under which she would have a conviction to appeal in this case. And so ---- She's not appealing her conviction. I guess that's what I just ---- I think your position is wrong here, because she's not saying, I want to go back and litigate whether ---- I don't even remember what the underlying charge was. Was it a drug charge? She's not trying to say, well, no, actually, I didn't give the person the drugs or whatever. That's not what she's trying to do. She's trying to ---- I respectfully disagree, Your Honor. You cannot get to that point without unwinding her conviction. There is no way back to the determination of CASA without overturning or vacating her conviction in this case. There's no other way there. This isn't an appeal from a collateral order. This isn't some sort of interlocutory appeal. All right. But you want to argue this, I guess, well, I don't know how you're trying to argue it, but it seems to me what our cases say is that the language of these plea waivers is construed against you, the government, as the drafter, and we're supposed to figure out what a reasonable defendant with reasonable counsel giving them competent advice would understand that waiver language to mean. And, I mean, my experience is that people look at that language, and if you would have added another sentence like your opponent suggested, maybe we wouldn't be here. But people look at that language, and they would tell their client, you're getting to give up any right to challenge your factual innocence of these charges. You're basically putting all that aside. We're going to go over and do this other thing, and there are all these rules, of course, that you have to comply with. But I don't think a reasonable lawyer in this situation would have known to tell her. And, by the way, if no matter what the arbitrary basis on which the judge might terminate you from this program, you're not going to be able to get appellate review of that. I don't think any lawyer would read it that way. So I have three counterpoints to Your Honor's concerns. The first is there is a difference between ambiguity and generality. I think that's what Rahman and Geronimo stand for. And I understand Your Honor sees a distinction between those cases in here. Respectfully, I think they're very similar. And a general waiver of appeal is not ambiguous. The general includes the specific, and as a result, it would include appeal from CASA here. Two, on the reasonable expectations, both the record in this case and, I think, the structure of CASA more generally speak to what defendant's expectations were. During her Rule 11 colloquy, Judge Phillips did actually an exceptionally clear job of explaining to defendant that if she pleaded guilty pursuant to this plea agreement, that there would be nothing left in the case other than either CASA or sentencing. She specifically said at ER 69 that defendant would be bound by her guilty plea even if she didn't complete the CASA program and even if she was ultimately unhappy with the sentence she received. So I think the Rule 11 colloquy actually lends support to the government's interpretation. And finally, I wouldn't go so far as to push back on the construal against the drafter rule, but defendant was represented by a member of the public defender's office. The public defender's office is a partner with my office in the CASA program and jointly developed the program, including the CASA contract. This is the only appeal ever in about 200 current and former participants of a termination of CASA. There have been about 12. In every case, the public defender's office has been a part of those cases. The public defender's office has been a part of drafting these documents. I think the same plea agreement has been used over time. And so I think both the specific record and the more general record of how CASA operates rebuts the presumption that defendant wouldn't have understood. I think it actually cuts directly against you. I'm surprised you raised that as a point in your favor. It seems to me that that just proves my intuition, which is that you're assuming that because there weren't any appeals in the other 12 cases where there were terminations that the public defender said, oh, boy, we're bound by this damn plea waiver. Shoot. Rather than, well, maybe they just didn't have any basis to actually appeal. And I guess I'm saying that the vast majority of lawyers, criminal defense lawyers who look at that language understand it to relate to something totally different to the underlying charge that the person is trying to fight against rather than the grounds for termination. Because I guarantee you if in one of those cases the person actually had complied with every single condition imposed, but for some arbitrary or perhaps unconstitutional reason the district court judge just said, you know what, I just don't like you. You're terminated and your conviction is going to now be final. I know those lawyers would say, oh, we didn't sign up for this and we didn't make the decision to terminate you when there was no basis for doing so. As a textual matter, Your Honor, I considered it. I still disagree. That said, I will spend my last four minutes on the merits. I think the standard of review should be plain error for any constitutional aspect of defendant's claim and abuse of discretion for their more general claims. Defendant never raised any constitutional objection to termination from CASA. The only thing in the record indicating defendant's argument at that time is effectively a letter in mitigation that was written by her public defender at the time arguing for lesser sanctions even after Ms. Jarrett's multiple violations. Insofar as there was no constitutional claim preserved, I think it should be reviewed for plain error. An interesting aspect of that claim in particular is that I disagree with my colleague a little bit in that it's effectively a procedural constitutional claim. It's akin to the procedures that one has to do at sentencing, advising the defendant of various rights or getting the guidelines correctly. Under the various constitutional cases, effectively a court has to consider fault before terminating an impoverished defendant for failure to pay. As this court does in procedural sentencing context reviewing for plain error, you cannot find plain error on this record where the record demonstrates that the district court did take into account defendant's fault, did find that defendant's credibility was in question, found that she had just repeated excuses over the course of 18 months, always made these promises to do better and to move and never did. I think particularly for review on plain error, that would satisfy any considerations underlying the constitutional line of cases. Moreover, defendant can't demonstrate prejudice even if there isn't a record of what the district court thought exactly at the time. The sentencing transcript makes abundantly clear exactly what the district court had in mind at the time and particularly given that the district court had an 18-month period during which to look this defendant in the eye and assess her efforts to comply with the conditions that she undertook in this case. There certainly can be no finding of an abuse of discretion. And on that ground, the government would submit that the case should be dismissed or else denied on the merits. Thank you. Thank you. You had about a minute left for a vote. If the court has any questions, I'll submit it on the record. Okay. Thank you. Our case has argued. I will send it to you.
judges: Kozinski, Watford, Whaley